THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| T.W. and C.W.,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD OF TEXAS,<br><br>Defendant. | Case No. 1:25-cv-4284<br><br>Hon. Georgia N. Alexakis |

**DEFENDANT'S COMBINED MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND OPPOSITION TO PLAINTIFFS' MEMORANDUM OF ARGUMENT IN SUPPORT OF RULE 52 MOTION**

Martin J. Bishop
Rebecca R. Hanson
**CROWELL & MORING LLP**
300 N. LaSalle Drive, Suite 2500
Chicago, IL 60654
Telephone: (312) 321-4200
MBishop@crowell.com
RHanson@crowell.com

*Attorneys for Defendant Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Texas*

Pursuant to Federal Rule of Civil Procedure 52, Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Texas ("BCBSTX"), respectfully moves this Court for judgment on Plaintiffs T.W.'s and C.W.'s (collectively, "Plaintiffs") section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") benefits claim and for violation of the Mental Health Parity and Addiction Equity Act ("Parity Act") (ECF No. 1). BCBSTX also respectfully requests that this Court deny Plaintiffs' motion for judgment (ECF No. 44).

## I. INTRODUCTION

This dispute relates to benefits for [redacted] that C.W. received at Triumph Youth Services ("Triumph") from April 20, 2022, through January 29, 2023. This case raises two issues, which should be resolved in BCBSTX's favor. First, relating to Count I, BCBSTX properly denied C.W.'s claim for benefits under Plaintiffs' ERISA-governed health benefits plan ("Plan") because C.W.'s continued treatment at the [redacted] was not medically necessary after May 18, 2022 as C.W. no longer exhibited symptoms [redacted] ("PDTF").

Second, relating to Count II, BCBSTX did not violate the Parity Act. BCBSTX used criteria for mental health and medical/surgical services developed using the same evidence-based process, and there is no evidence that BCBSTX applied its mental health criteria more stringently.

The Court should enter judgment in BCBSTX's favor and deny Plaintiffs' Motion.

## II. FACTUAL BACKGROUND

### A. Plaintiffs' Health Plan Benefits

T.W. is a member of a fully insured employee welfare benefit plan issued by BCBSTX, and C.W. is a beneficiary under the Plan.[1] PFF ¶¶ 1-2. The Plan covers a continuum of mental

[1] BCBSTX incorporates the facts in its Proposed Findings of Fact ("PFF") filed contemporaneously and includes this brief recitation for the Court's convenience.

health care from the most intensive level (24-hour hospital care) to the least intensive (outpatient services); [redacted] is the second most intensive, providing "medically monitored with 24 hour medical availability and 24 hour onsite nursing service[s]…." *Id.* ¶¶ 3-6.

To qualify for Plan benefits, services must be "Medically Necessary," meaning they are "consistent with generally accepted standards of medical practice in the United States," and "[t]he most economical . . . levels of service that are appropriate for the safe and effective treatment of the Participant." *Id*. ¶¶ 7-8. This definition applies equally to mental health and medical/surgical services. *Id*. ¶ 8. BCBSTX uses the MCG Guidelines to determine if care is Medically Necessary. The MCG Guidelines for all conditions, mental health and medical/surgical alike, are developed using the same evidence-based approaches and evidentiary standards. *Id.* ¶ 10.

The MCG Guidelines for both [redacted] and SNF note that services are medically necessary when the patient's symptoms are not so intense as to require hospital care but are too intense for outpatient care. *Id.* ¶¶ 12, 19. For [redacted], a patient must be a [redacted]. *Id.* ¶¶ 12, 16. For SNF, the patient must not have acute needs requiring hospital care but must have acute enough needs that 24-hour care is warranted. *Id.* ¶ 19. The MCG Guidelines do not require that symptoms are fully resolved to warrant discharge and rather ask if symptoms are manageable at a lower level of care. *Id.* ¶¶ 13-14.

### B. C.W.'s Treatment at Triumph and BCBSTX's Coverage Determinations

Triumph admitted C.W. to its program on April 20, 2022 due to [redacted]. *Id.* ¶ 22. At the time of his admission, Triumph also reported that C.W. [redacted]. *Id.* ¶¶ 22-23. Based on C.W.'s [redacted],

BCBSTX initially authorized twelve days of [redacted] from April 20 to May 1, 2022, finding [redacted] was medically necessary under the MCG Guidelines because C.W. exhibited [redacted] including the behaviors noted for admission. *Id.* ¶¶ 26-27. BCBSTX then approved an extension of benefits through May 18, 2022—based on Triumph's reports that C.W. had [redacted]. *Id.* ¶¶ 28-31.

On May 18, 2022, Triumph reported that C.W.'s [redacted]. *Id.* ¶¶ 32-33. BCBSTX's denial letter also explained that C.W. [redacted]. *Id.* ¶ 33. Based on Triumph's report, BCBSTX determined that C.W. no longer satisfied the MCG Guidelines for [redacted] and that C.W.'s [redacted] were manageable at a lower level of care. *Id.*

Triumph and BCBSTX held a peer-to-peer clinical review on May 19, 2022, where Triumph's clinician confirmed C.W. did not have [redacted] required for [redacted] *Id.* ¶ 34. BCBSTX's physician reviewer confirmed C.W. did not meet the MCG Guidelines for [redacted]. *Id.* C.W.'s last covered day was May 18, 2022. *Id.* ¶ 33.

Although C.W. remained at Triumph until January 29, 2023, C.W.'s medical records indicate that his symptoms did not warrant continued [redacted] after May 18, 2022. Triumph consistently documented that C.W. [redacted]. *Id.* ¶¶ 48-65, 71. C.W. [redacted]

[redacted]. *Id.* ¶ 45. None of C.W.'s records [redacted]. *Id.* ¶¶ 45, 49, 54, 56, 59, 62, 71.

In addition, Triumph's monthly progress reports (each, a "Progress Report") from April, May, and August through December 2022 noted that C.W. was not [redacted] *Id.* ¶¶ 44, 47, 58, 61, 62. Otherwise, Triumph reported that [redacted]. *Id.* ¶ 54. While Triumph noted that C.W. [redacted] Triumph also repeatedly noted that C.W. made [redacted]. *Id.* ¶¶ 45-73.

In fact, Triumph's actions demonstrated C.W.'s progress. Triumph allowed C.W. to attend off-campus events. C.W. participated in two extended off-campus trips: a twelve-day trip to Alaska from June 22 through July 3, 2022 (*id.* ¶ 51), and a two-week trip to Oregon in Fall 2022 (*id.* ¶ 60). C.W. also made off-campus visits with his family, including a day visit in October 2022, which both C.W. and T.W. agreed went well, and visits with his mother on December 9, 10, and 11, 2022. *Id.* ¶¶ 64, 69. Triumph's December 2022 Progress Report also noted that C.W. [redacted] *Id.* ¶ 70. In January 2023, C.W. showed similar levels of engagement as in prior months, and [redacted]. *Id.* ¶¶ 71, 73.

On February 6, 2023, T.W. appealed BCBSTX's denial of benefits. *Id.* ¶ 35. BCBSTX's physician reviewer upheld the denial explaining that C.W. had [redacted]. *Id.* ¶ 36. Plaintiffs sought review by an Independent Review Organization

("IRO"), which upheld BCBSTX's denial noting by May 18, 2022, C.W. "had improved such that [C.W.] no longer needed the structure, support, or supervision of this level of care." *Id.* ¶¶ 37-38. BCBSTX is required to comply with the IRO's decision. *Id.* ¶ 21.

### C. Plaintiffs File Suit Against BCBSTX

Plaintiffs filed a two-count Complaint. *See* ECF No. 1 (Compl.). In Count I, Plaintiffs assert a claim for benefits under ERISA section 502(a)(1)(B), alleging BCBSTX improperly denied coverage for C.W.'s treatment at Triumph after May 19, 2022 in violation of the Plan, and that BCBSTX failed to provide a full and fair review of C.W.'s claims. Compl. ¶¶ 67-72. In Count II, Plaintiffs allege that BCBSTX violated the Parity Act by applying acute-level criteria to evaluate C.W.'s need for sub-acute [redacted], while not imposing comparable acute care requirements on SNF. *Id.* ¶¶ 78-85. Plaintiffs further allege that BCBSTX failed to provide an adequate network of RTCs, alleging BCBSTX has more SNFs than [redacted] in its network. *Id.* ¶¶ 90-91.

## III. LEGAL STANDARD

Rule 52 permits a trial on the papers and for the court to weigh the evidence, make conclusions, and resolve factual disputes. *Daniliauskas v. Reliance Standard Life Ins. Co.*, No. 16-cv-9278, 2018 WL 1336051, at *3 (N.D. Ill. Mar. 14, 2018). This Court conducts a *de novo* review of an ERISA case and makes an "independent decision" about Plaintiffs' entitlement to benefits. *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009). On *de novo* review, "[w]hat happened before the Plan administrator or ERISA fiduciary" is irrelevant; rather, "the ultimate question [is] whether [a member] was entitled to the benefits . . . ." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007). Plaintiffs must prove their entitlement to benefits by a preponderance of the evidence. *Slaughter v. Hartford Life & Accident Ins. Co.*, No. 22-cv-5787, 2024 WL 3251371, at *7 (N.D. Ill. July 1, 2024).

## IV. ARGUMENT

### A. Plaintiffs Are Not Entitled to Plan Benefits

#### 1. *C.W.'s Continued Stay at Triumph Was Not Medically Necessary.*

Plaintiffs' claim for benefits under ERISA fails because they cannot show by a preponderance of the evidence that C.W. required [redacted] after May 18, 2022. *See Jones v. Unum Life Ins. Co. of Am.*, No. 24 C 3911, 2026 WL 96985, at *2 (N.D. Ill. Jan. 13, 2026). To qualify for continued [redacted], C.W. had to be such a danger to himself or others or have such "serious dysfunction" in his ability to complete daily living tasks that he required 24-hour care. PFF ¶¶ 12-16 (MCG Guidelines requirements).[2]

Here, Plaintiffs cannot establish entitlement to Plan benefits because the record shows that discharge from [redacted] was appropriate as of May 18, 2022. At admission in April 2022, C.W. required [redacted] due to [redacted]. *Id.* ¶¶ 22-24. By May 18, 2022, Triumph reported that C.W. was [redacted]. *Id.* ¶ 45. C.W. did not [redacted] and Triumph's May 2022 Progress Report rated him as [redacted]. *Id.* ¶¶ 32, 45, 47. Although C.W. experienced [redacted] BCBSTX determined—based on Triumph's reports—that such struggles were manageable at a lower level of care. *See id.* ¶ 33. Thus, C.W. met the MCG Guidelines discharge criteria because his symptoms had improved and become manageable at a

[2] C.W. plainly did not exhibit the level of symptoms required to satisfy the MCG's requirement [redacted] PFF ¶ 15.

lower level of care, as confirmed by the IRO's decision to uphold BCBSTX's denial. *Id.* ¶¶ 13, 38.

C.W.'s behavior after May 18, 2022 confirmed that the step-down decision was correct. Triumph's records from June 2022 through January 2023 overwhelmingly describe C.W. as [redacted] *Id.* ¶¶ 48-49, 51, 53-55, 57, 58, 59, 61-62, 69-70, 71, 72. After May 18, 2022, Triumph consistently reported that C.W. [redacted] *Id.* ¶¶ 49, 54, 56, 59, 62, 71. C.W. managed his activities of daily living, and he participated in multiple off-campus visits and trips, during which C.W. [redacted] *See id.* ¶¶ 51, 60, 64, 69; *see also Mike G. v. Bluecross Blueshield of Texas*, No. 2:17-CV-347 TS, 2019 WL 2357380, at *15 (D. Utah June 4, 2019) (finding RTC no longer "medically necessary," including because she "left campus . . . for a visit with her mother," showing "an ability to generalize her skills in her home environment"); *Howard W. v. Providence Health Plan*, 652 F. Supp. 3d 1293, 1310 (W.D. Wash. 2023) (finding member's off-campus trips "suggest[ed] she did not require the 24-hour care provided in residential treatment").

Triumph also acknowledged C.W.'s significant progress, noting in August 2022 that C.W. was a [redacted] PFF ¶ 57. Triumph's Progress Reports from August through December 2022 consistently reported that C.W. [redacted] *Id.* ¶¶ 58, 61, 62. Although the record reflects that C.W. had [redacted] not to a worsening of or retreat to the symptoms that had warranted his initial admission. *See id.* ¶ 69.

Courts have held that [redacted] was not medically necessary where the patient's symptoms

were far more severe than C.W.'s. *See e.g., C.T. v. BlueCross BlueShield of Illinois*, 23 CV 6112, 2025 WL 4092204, at *8 (N.D. Ill. Apr. 17, 2025); *Christina M. v. United*, 1:22-CV-0136, 2024 WL 4534687, at *13 (D. Utah Sept. 23, 2024); *L.C. v. Blue Cross & Blue Shield of Tex.,* 2:21-cv-319, 2023 WL 1930227, at *15-16 (D. Utah Feb. 10, 2023).

*L.C.* is particularly instructive. There, during the covered period, the patient exhibited severe behaviors, including attempting to hang herself, choking herself, banging her head against walls and floors, requiring hospitalization for refusing food and water, and physical aggression toward staff and peers. 2023 WL 1930227, at *3-6. During the denied period, the patient continued to exhibit behaviors, including incidents of head-butting and punching walls, physical aggression toward staff and peers requiring physical intervention, homicidal ideations, suicidal gestures, and self-harm. *Id*. at *6-9. Despite these ongoing behaviors, the court, applying the MCG, found the patient had "demonstrated a marked improvement" such that her "danger to herself or others was manageable at a lower level of care (partial hospitalization)." *Id.* at *14-15. The court concluded that "a preponderance of the evidence" did not support continued RTC care and found L.C.'s functional status was "acceptable for discharge to a lower level of care." *Id.* at *15-16.

Similarly, in *Christina M.*, the patient experienced "dissociation, flashbacks, nightmares" and "hallucinations" during RTC treatment, yet the court found RTC "was not medically necessary" because the patient "was receptive to treatment, actively participating in therapy, and was seen as a model student and leader among his peers" with no "reported instances of . . . endangering himself or others." 2024 WL 4534687, at *9-10. In *C.T.*, the member abused his therapy dog, was "easily angered," and "act[ed] out" in response to bullying, yet the court found RTC was not medically necessary because he "did not report thoughts of harming himself or others," his "mood was either good or pretty good," he "was compliant with his medication," and

he "participated well in programming and had many successful off-campus trips[.]" 2025 WL 4092204, at *6, *8-9. These cases instruct that all behavioral issues do not need to resolve to warrant step down from RTC level of care – lower levels of care such as partial hospitalization exist to deal with continued behaviors that do not require 24-hour, round-the-clock care. The alternative is untenable – endless care at the RTC level.

Here, C.W.'s symptoms were much less severe than those in *L.C.*, *Christina M.*, and *C.T.*, yet each court in those cases found RTC care was not medically necessary. Throughout his treatment at Triumph, C.W. [redacted] C.W. demonstrated consistent improvement during the covered period: [redacted] (PFF ¶¶ 45-49, 51, 53-55, 57, 59, 61-62, 69-70, 72); [redacted] (*id.* ¶¶ 45, 49, 54, 56, 59, 62, 71); [redacted] May through December 2022 (*id.* ¶¶ 44, 47, 58, 61, 62); Triumph itself acknowledged that C.W. [redacted] (*id.* ¶ 57) and he participated in multiple off-campus visits and trips [redacted] (*id.* ¶¶ 51, 60, 64, 69). If the far more symptomatic patients in *L.C.*, *Christina M.*, and *C.T.* could be safely stepped down to a lower level of care, C.W. could as well. *See Mike G.*, 2019 WL 2357380, at *15; *Christine S. v. Blue Cross Blue Shield of N.M.*, 2:18-cv-874, 2021 WL 4805136, at *5 (D. Utah Oct. 14, 2021).

In their Motion, Plaintiffs make three unavailing arguments that C.W. met the Plan's terms for continued [redacted] First, Plaintiffs speculate that C.W.'s prior discharge from a separate facility demonstrates he "would likely have regressed back to his previous dangerous behaviors" if discharged from Triumph in May 2022. *See* ECF No. 44-2 at 2. This argument fails. C.W.'s

treatment at that facility occurred approximately three years before Triumph, and "what is most important … are what symptoms [the member] presented 'immediately before or during' his time at [the [redacted]." *C.T.*, 2025 WL 4092204, at *8. By May 18, 2022, C.W. [redacted] PFF ¶¶ 45-47; *id.* ¶¶ 45, 49, 54, 56, 59, 62, 71. *See, e.g.*, *L.C.*, 2023 WL 1930227, at *14-16 (continued RTC not medically necessary where member "demonstrated a marked improvement" such that symptoms were "manageable at a lower level of care"). Under Plaintiffs' theory, C.W. would have to remain in [redacted] indefinitely because there would always be a threat of regression. That view is untenable.

Second, Plaintiffs contend that C.W.'s medical records from around May 18, 2022 undermine BCBSTX's determination because C.W. was purportedly [redacted] *See* ECF No. 44-2 at 2. Plaintiffs cherry-pick the record. Triumph also described C.W. [redacted] during this period. PFF ¶¶ 45-47. BCBSTX's reviewers specifically considered the [redacted] and determined that C.W.'s [redacted] a lower level of care. *Id.* ¶ 33. Triumph also reported that C.W. was [redacted] *Id.* ¶¶ 32, 55, 57.

Plaintiffs further point to two incidents in June to support continued [redacted]. *See* ECF No. 44-2 at 2-3. These isolated incidents do not establish medical necessity. On June 14, C.W. [redacted] BCBSTX's Response to Plaintiffs' Proposed Findings of Facts ¶ 48(f). On June 19, Plaintiffs describe a [redacted]

[redacted]

PFF ¶ 49. These incidents cannot overshadow the overwhelming evidence of C.W.'s [redacted] *See, e.g.*, PFF ¶¶ 45-47, 49, 51, 53-55, 57-58, 61-62, 70; *C.T.*, 2025 WL 4092204, at *9 (events attributable to the RTC environment do "not justify RTC-level care"). Even far more severe symptoms do not necessarily warrant continued [redacted] *See supra* at 8-9; *L.C.*, 2023 WL 1930227, at *14-16; *Christina M.*, 2024 WL 4534687, at *9-10.

Third, Plaintiffs quibble that BCBSTX's denial was wrongly premised on C.W.'s family support. *See* ECF No. 44-2 at 3. Family involvement was only one factor noted in the appeal denial and is supported by the record—C.W.'s family participated in family therapy, treatment team meetings, and visited C.W. on multiple occasions. PFF ¶¶ 36, 42, 57, 64, 69, 73. Regardless, C.W.'s symptoms were manageable at a lower level of care. *Id.* ¶¶ 33, 36, 38.

**2. *Procedural Errors Are Irrelevant to This Court's De Novo Review.***

Plaintiffs' unsupported allegation that BCBSTX failed to provide a "full and fair review" (Compl. ¶¶ 69-71) is unavailing because this Court must reach an "independent decision" on whether Plaintiffs are entitled to benefits under the Plan. *Diaz*, 499 F.3d at 643. In any event, BCBSTX afforded Plaintiffs reasonable opportunity for review, including detailed denial and appeal letters citing C.W.'s improved condition, a full internal appeal reviewed by a physician, and an Independent External Review that upheld BCBSTX's denial. PFF ¶¶ 34-41. Moreover, an award of benefits is not the appropriate remedy for a procedural violation.[3] *See Kough v.*

[3] Plaintiffs also argue that BCBSTX should not be allowed to advance new denial rationales on *de novo* review. As a threshold matter, BCBSTX has not done so; BCBSTX's position has been consistent throughout: C.W.'s symptoms improved by May 18, 2022 such that he no longer required [redacted] and could be safely and effectively treated at a lower level of care. PFF ¶¶ 33-34, 36, 38. Additionally, Plaintiffs misunderstand *de novo* review. On *de novo* review, the Court does not review BCBSTX's denial rationales – such rationales are "irrelevant" to the Court's review. *Diaz*, 499 F.3d at 643. Instead, the Court makes its own independent determination of the record. *Id.*

*Teamsters' Local 301 Pension Plan*, 437 F. App'x 483, 488 (7th Cir. 2011).

### B. BCBSTX Is Entitled to Judgment on Count II

In Count II, Plaintiffs allege that BCBSTX's denial violated the Parity Act because BCBSTX used medical necessity criteria requiring acute symptoms for [redacted] versus only "sub-acute" symptoms for SNF.[4] *See* Compl. ¶¶ 78-89; ECF No. 44-2 at 3-7. As demonstrated below, Plaintiffs have adduced no evidence of a Parity Act violation.

#### 1. *The Parity Act Requires Plans to Use Comparable Processes.*

At issue are non-quantitative treatment limitations ("NQTLs"), which "limit the scope or duration of benefits for treatment." 29 C.F.R. § 2590.712(a)-(c). NQTL comparisons are made across mental health and medical/surgical benefits within benefit "classifications." *Id.* § 2590.712(c)(2)(ii)(A). Here, the relevant classification is inpatient, out-of-network care, and [redacted] and SNF are analogous services. *See id.*; 78 Fed. Reg. 68240-01, 68246-47 (Nov. 13, 2013). A facial Parity Act violation requires showing that the "processes, strategies, evidentiary standards, or other factors" used to develop an NQTL are not comparable across mental health and medical/surgical benefits in the same classification. 45 C.F.R. § 146.136(c)(4)(i); *Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, 3:18-cv-873, 2021 WL 1026383, at *10-11 (D.S.C. Mar. 17, 2021). An as-applied violation requires showing the NQTL is applied more stringently to mental health benefits. *Id*. Plaintiffs can establish neither.

#### 2. *The Plan's Medical Necessity Terms and Guidelines Are Compliant With the Parity Act.*

Plaintiffs' Parity Act claim in Count II fails because the Plan's medical necessity terms and criteria facially comply with the Parity Act. BCBSTX uses the same "medical necessity" definition

---

[4] Plaintiffs do not raise, and therefore waive, their allegations regarding network adequacy and production of Parity Act documents. *See* Compl. ¶¶ 90-94; *see also SBC Tower Holdings, LLC v. Lariba Group, LLC*, No. 22 CV 3219, 2025 WL 2696440, at *7 (N.D. Ill. Sept. 22, 2025) (J. Alexakis).

for mental health and medical/surgical services, the MCG Guidelines for [redacted] and SNF were developed using the same evidence-based approaches, editorial processes, and evidentiary standards, and both assess whether a member's symptoms require 24-hour care. PFF ¶¶ 6-8, 10-20. Indeed, the Plan's "Medically Necessary" definition does not vary by service type and applies equally to mental health and medical/surgical services. PFF ¶ 8. Thus, there is no facial Parity Act violation. *See* 78 Fed. Reg. 68245; 45 C.F.R. § 146.136; *see, e.g.*, *R.S. v. Quartz Health Benefit Plans Corp.*, No. 22-CV-418-WMC, 2026 WL 309629, at *9 (W.D. Wis. Feb. 5, 2026) (rejecting Parity Act claim where guidelines were developed using comparable processes); *L.D. v. United HealthCare Insurance*, 684 F. Supp. 3d 1177, 1206 (D. Utah 2023).

The MCG Guidelines for [redacted] and SNF both assess whether a patient's symptoms warrant 24/7 care—not whether "acute" symptoms are present as a binary prerequisite. *See* PFF ¶¶ 11-19. For both [redacted] and SNF, the test is whether the patient's symptoms are too acute for outpatient care but not so acute as to require hospitalization. Because both sets of guidelines apply this same continuum-based framework, the criteria are comparable and there is no Parity Act violation, even though the MCG Guidelines do not use identical language for [redacted] and SNF. *Michael M.*, 2021 WL 1026383, at *12; *see* 78 Fed. Reg. at 68245; *James C. v. Anthem Blue Cross & Blue Shield*, 2:19-cv-38, 2021 WL 2532905, at *20 (D. Utah June 21, 2021); *R.S.*, 2026 WL 309629, at *9; *Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 57 (W.D.N.Y. 2020). Indeed, courts reject attempts to cast the medical necessity question as a binary question of whether the member is acute or not. *See, e.g.*, *Kirsten W. v. California Physicians' Serv.*, No. 2:19-CV-00710-DBB-JCB, 2025 WL 447890, at *2, 18 (D. Utah Feb. 10, 2025) (no violation where guidelines asked reviewers to assess if patient could be treated at a less intensive level); *cf. Howard W.*, 652 F. Supp. 3d at

1312-13; *Julie L.,* 447 F. Supp. 3d at 54-55; *Michael M.*, 2021 WL 1026383, at *13-15; *Anne M. v. United Behavioral Health*, 2:18-CV-808, 2022 WL 3576275, at *9-11 (D. Utah Aug. 19, 2022).

It is of no moment that the MCG Guidelines do not use the same language to describe the medical necessity criteria for [redacted] and SNF. *See, e.g.*, *James C.*, 2021 WL 2532905, at *20 (no Parity Act violation because RTC and SNF were "comparable"); *R.S.*, 2026 WL 309629, at *9; *Julie L.*, 447 F. Supp. 3d at 57. Because the MCG Guidelines for both [redacted] and SNF require a member have symptoms requiring 24/7 care, there is a "comparable application," and therefore no Parity Act violation. *See* 78 Fed. Reg. 68245 (comparable processes do not violate Parity Act).

Plaintiffs assert that because BCBSTX noted C.W. lacked harm to self or others and hallucinations meant that BCBSTX required "acute" symptoms for [redacted], citing *Jonathan Z v. Oxford Health Plans* and *S.K. v. United Behavioral Health*.[5] ECF No. 44-2 at 4-5. But BCBSTX did exactly what the MCG Guidelines require—it determined whether C.W.'s symptoms fell within a range that warranted continued [redacted] *L.C.*, 2023 WL 1930227, at *18-20; *Kirsten W.*, 2025 WL 447890, at *18 (noting that taking a patient's risk of harm into account did not equate to requiring acute symptoms for coverage). "Coverage is not categorically guaranteed or precluded with the presence . . . of certain symptoms."[6] *L.C.,* 2023 WL 1930227, at *20.

---

[5] As the court recognized in *L.C. v. Blue Cross & Blue Shield of Tex.*, the MCG Guidelines function differently than the criteria at issue in *Jonathan Z.* because the MCG Guidelines "direct[] reviewers to evaluate medical necessity and determine which level of care is appropriate along the continuum of care," rather than "categorically guarantee[] or preclude[] coverage" based on certain symptoms. *L.C.*, 2023 WL 1930227, at *20; PFF ¶¶ 10-15, 18, 20. *S.K.* is likewise inapposite because the court did not require the plaintiff to compare *how* the administrator applied mental health criteria with *how* it applied medical/surgical criteria, as the Parity Act requires. *S.K.*, 2023 WL 7221013. Finally, *James F. ex rel. C.F. v. CIGNA Behavioral Health, Inc.*, 2010 WL 5395075 (D. Utah Dec. 23, 2010), did not address a Parity Act violation, ECF No. 44-2 at 5, and is distinguishable because the administrator there applied the wrong criteria, *James F.*, 2010 WL 5395075 at *5, whereas BCBSTX applied the correct criteria here.

[6] Plaintiffs attempt to undermine BCBSTX's use of the MCG Guidelines for [redacted] by referencing guidelines BCBSTX did not apply to C.W. Plaintiffs argue the "InterQual Criteria are inappropriately acute," but BCBSTX used the MCG Guidelines, not the InterQual. *See* ECF No. 44-2 at 5-6; PFF ¶¶ 10-16. Plaintiffs also cite the MCG Guidelines for anorexia nervosa at SNFs (ECF No. 44-2 at 6), but C.W. did not have

Finally, Plaintiffs' reliance on the American Psychiatric Association's ("APA") guidance is unavailing. *See* ECF No. 44-2 at 5. The APA guidance advises against requiring "imminent danger to self or others as a prerequisite" for mental health care. *Id.* The MCG Guidelines are consistent with this guidance: they do not require imminent danger but rather identify danger to self or others as one of several alternative indicators that a patient's symptoms warrant 24-hour care. PFF ¶¶ 11-12, 15-16. Assessing symptom severity is fundamentally different from imposing imminent danger as a binary prerequisite. *Id.* ¶¶ 12-14. Accordingly, there is no Parity Act violation here.

#### 3. *Plaintiffs Have No Evidence of An As-Applied Parity Act Violation.*

Plaintiffs have not adduced evidence of an "as-applied" violation of the Parity Act. ECF No. 44-2. Plaintiffs must compare whether BCBSTX applies medical necessity criteria more stringently to mental health benefits than to medical/surgical benefits. *See, e.g.*, *R.S.*, 2026 WL 309629, at *10; *Robert B. v. Premera Blue Cross*, 701 F. Supp. 3d 1153, 1181-82 (D. Utah 2023); *L.C.*, 2023 WL 1930227, at *18-19. Here, Plaintiffs' lack of a comparison to the MCG Guidelines for SNF dooms their claim. *See* 45 C.F.R. § 146.136(c)(4)(i). Plaintiffs fail to demonstrate a Parity Act violation. *See City of Chicago v. Barr*, 961 F.3d 882, 911 (7th Cir. 2020).

## V. CONCLUSION

For the foregoing reasons, BCBSTX respectfully requests that this Court enter judgment in its favor on both Count I and Count II of Plaintiffs' Complaint.

---

anorexia nervosa, and BCBSTX did not apply those guidelines to his coverage request. Regardless, the MCG Guidelines for SNF require the patient have "intense and complex care needs that make recovery facility care safer and more practical than attempting care at a lower level" and that "[t]here are no acute hospital care needs"—the same continuum-based framework applied under the MCG Guidelines for [redacted]. PFF ¶¶ 11-15, 18-19. Far from demonstrating a "stark disparity," the MCG Guidelines for [redacted] and SNF apply comparable standards. *See* 78 Fed. Reg. at 68245; *L.C.*, 2023 WL 1930227, at *18-20.

Dated: September 25, 2026.

Respectfully submitted,

/s/ *Rebecca R. Hanson*
Martin J. Bishop
Rebecca R. Hanson
**CROWELL & MORING LLP**
300 N. LaSalle Drive, Suite 2500
Chicago, IL 60654
(312) 321-4200
MBishop@crowell.com
RHanson@crowell.com

*Attorneys for Defendant Health Care Service Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, a true and correct copy of the foregoing was served on Plaintiffs' counsel of record in accordance with the Federal Rules of Civil Procedure:

Brian S. King
Brian S. King P.C.
420 E. South Temple Street, Suite 420
Salt Lake City, Utah 84111
Telephone: (801) 532-1739

*Attorney for Plaintiffs*

/s/ *Rebecca R. Hanson*
Rebecca R. Hanson